## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO. A-17-CR-156 SS |
| | § | |
| EDGAR ALFREDO VALLADARES | § | |

## <u>ORDER</u>

This case came before the undersigned on September 13, 2018, for a hearing on the Government's Motion to Detain the Defendant without Bond (Dkt. No. 3). The checklist motion sought detention on a single ground: the allegation that the defendant poses a serious risk of flight. After considering the evidence presented and the arguments of counsel, the Court concluded that Valladares did not pose a serious risk of flight, and denied the motion to detain and set conditions of release. The Government stated on the record its intention to seek review of this decision, and sought a stay of the Order Setting Conditions of Release pending that appeal. The undersigned granted that motion in open court. The purpose of this order is to provide the district judge with a clear record of the Court's reasons for its decision.

Defendant Edgar Alfredo Valladares is a Honduran citizen who was found in the United States on September 3, 2016. The Government alleges Valladares was deported from the United States on December 29, 2010, and that prior to being found back in the U.S. he had not received permission to reenter. It appears that Valladares came to the attention of Immigration and Customs Enforcement agents when he was arrested by the Austin Police Department on September 30, 2016.[1] He was released on a personal bond and ultimately was placed on a pretrial diversion program in

---

[1] As mentioned, the indictment alleges Valladares was "found in" the U.S. on September 3, 2016, whereas the Pretrial Services Report states he was arrested on September <u>30</u>, 2016. It is not clear if one of these two dates is erroneously stated, but it is likely supposed to be the same date.

Travis County.  He has been participating in that program since January 4, 2018, during which time he has regularly reported to his state pretrial officer, completed a drug education class, and made all of his appearances in drug court.  If he successfully completes the program, in January 2019 he will be discharged, and no charges will be filed against him.[2]  Valladares has resided with Melissa Jimenez since 2013, and the two were married in 2017.  Ms. Jimenez is a United States citizen, and is employed as the Administration Manager at the Seton Clinic in Westlake, Texas.  With the exception of his 2010 deportation, Valladares has lived in the U.S. since 2001.  In the middle of 2017, after the indictment was filed, but before Valladares had been arrested, he applied with U.S.C.I.S. for a U visa (a visa available to certain crime victims). During this time he was also interviewed by immigration officials related to the application (and never arrested on the warrant in this case). The U visa application is still pending with U.S.C.I.S. and Valladares would forfeit that application if he were to leave the country.

As noted, the sole basis for the Government's motion to detain is the allegation there is a "serious risk that [Valladares] will flee."  Because the alleged crime here is not one of the crimes enumerated in the Bail Reform Act that create a presumption of detention (*see* 18 U.S.C. § 3142(e)(2)), there is no presumption and the Government has the burden to demonstrate Valladares should be detained.  In fact, because the underlying offense is not one of the limited number of offenses which allow the Government to even seek the detention of a defendant (*see id.* at

---

[2]The record before this Court does not fully explain the sequence of events, but the Pretrial Report states that Valladares was released on the personal bond on February 2, 2017.  And though Valladares appears to have been arrested on either September 3 or 30, 2016, I.C.E. did not present the complaint to the Court until February 3, 2017.  Regardless, ICE likely intended to take Valladares into custody directly from Travis County's custody, but was unable to do so on February 3, 2017, since he had been released the day before.  Whatever the facts, from February 2017, until Valladares was eventually arrested (on August 30, 2018), he was on bond on the state charge.

§ 3142(f)(1)), the Court may only even consider the detention of Valladares if it first finds that there is a "serious risk that [he] will flee." When, as here, a defendant is not a citizen or permanent resident of the United States, the Court is required to delay the detention hearing for up to 10 days, and to direct the attorney for the government to inform "the appropriate official of the Immigration and Naturalization Service." 18 U.S.C. § 3142(d)(2). "If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, *notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings*." *Id.* (emphasis added). This process was followed here, and I.C.E. did not take Valladares into custody during the 10-day period.

As noted, the BRA does not even allow the Court to consider detaining Valladares unless the Government shows that "there is a serious risk that [he] will flee." The only argument that the Government offered as to why Valladares poses a serious risk of flight if released is that, if the Court releases him on conditions, then I.C.E. will take him into custody and deport him and he thus will not be present for trial. Yes, you read that correctly. The Government contends that the defendant poses a serious risk of flight because if the undersigned releases him on conditions, *the Government* will remove him from the country. Indeed, the Government went even one step further, and contended that, because the Government has already decided that it will deport Valladares if the Court releases him, the Court *is obligated* to detain Valladares: "You know he's going to be deported. How can you set a condition that's going to assure his presence? We can play these games all day . . . ." Recording of hearing at 3:11:28-3:11:37. If taken to its logical conclusion, the Government's position would divest the judiciary of all discretion on the release or detention of non-citizens charged with a crime in federal court. Instead, the decision would rest entirely in the hands

3

of I.C.E.  If I.C.E. states that it *will* deport the defendant if released, then—according to the Government—the Court has no choice but to detain the defendant.

There are a number of fallacies with this argument.[3]  First, it is directly at odds with the BRA, which mandates that *the Court* makes release decisions, and directs that if immigration officials do not take a defendant into custody during the 10-day hold period, "such person *shall* be treated in accordance with the other provisions of [the BRA], *notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings*."  18 U.S.C. § 3142(d)(2) (emphasis added).  This means that what I.C.E. intends to do with Valladares once released on conditions is a factor that Congress has told the court it is *not* to consider in its analysis.  Second, whether I.C.E. deports Valladares is within the discretion of I.C.E., and it has the power to do otherwise.[4]  Indeed, the undersigned has been presiding over detention hearings for nearly 19 years, and over that time has released a number of non-citizens on bond.  Until the past few months, I.C.E. did not deport these individuals, but instead waited until their court proceedings were completed and they had served their sentences before deporting them.  Nothing in the law has changed over this time.  What *has* changed is how the Executive Branch has decided to handle these cases—something clearly within the Executive's prerogative—but that change cannot have the effect

---

[3]It is perhaps a sign of the times that the Court has to point out how absurd the Government's position is.

[4]The Government did not contend at the bond hearing that it was required by law to deport Valladares if he is released.  Nor could it.  The relevant statute expressly gives I.C.E. 90 days to effect a person's deportation, and that is only the general rule.  8 U.S.C. § 1231(a).  There are provisions of the Code of Federal Regulations that govern removal in cases in which a person is being prosecuted for a crime in the United States, and those give I.C.E. even more discretion.  *See, e.g.*, 8 C.F.R. § 215.3(g) (identifying a person against whom criminal charges are pending as a person whose departure from the United States would be prejudicial); § 215.2(a) (prohibiting anyone whose departure from the U.S. would be prejudicial from departing the country).

of suddenly requiring a different outcome on a matter the law places exclusively within the domain of the judicial branch of government, and which law expressly tells the Court in making its decision it is not to consider "any other provisions of the law . . . governing deportation or exclusion proceedings."

Even viewed in a more generous light—and not in the way the argument was presented at the hearing—the Government's argument is directly inconsistent with the BRA.  Rather than being taken to say that because the Government has *decided* to deport this defendant the Court must detain him, the Government could be understood to be saying that, under the complex immigration laws governing removal and deportation, I.C.E. has *no choice* but to deport a non-citizen released on bond.  And because I.C.E. has no choice, the Court also has no choice, and it must always detain non-citizens, as otherwise they will not be available for trial.  But even this is problematic, because this interpretation of the relevant statutes—one that is at best debateable and at worst baseless—would mean it is mandatory that a non-citizen awaiting trial in federal court be detained. But the law says the exact opposite.  The very statute that directly addresses whether a Court should detain a non-citizen awaiting trial in federal court—the Bail Reform Act—says the Court is to treat the person as it would any other person under the Act, notwithstanding whatever the law governing deportation might say.

The undersigned is not alone in reaching these conclusions.  Nearly every federal judge presented with these issues has concluded that the problem the Government claims exists here is one of its own making.  These judges have concluded that if I.C.E. wishes to federally prosecute a non-citizen for illegal reentry, then it is bound to live by the rulings of the federal courts, and the laws Congress has passed to govern release and detention.  If, on the other hand, I.C.E. wishes to

commence removal proceedings, it is free to do so and the courts have little if anything to say about that. But I.C.E. can't have it both ways, and insist that a defendant be detained simply because it will deport him if he's not. As a district judge recently pointed out in a similar case:

> The Government cannot and should not have it both ways. The United States Attorney's Office and ICE/DHS are part of one executive branch. As such, the Executive Branch should decide where its priorities lie: either with a prosecution in federal district court or with removal of the deportable alien. Courts "addressing the possibility of deportation during a criminal proceeding have explained that the Executive Branch has two choices when an alien unlawfully present in the United States after prior removal is facing criminal prosecution: The DHS may proceed administratively with deportation, or defer removal for the alien to face criminal prosecution."

*United States v. Ventura*, 2017 WL 5129012 at *2 (E.D.N.Y. Nov. 3, 2017) (quoting *United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1136 (M.D. Fla. 2015)). There are numerous other cases reaching effectively the same conclusion.[5]

There is one final flaw in the Government's insistence that the Court must detain Valladares in light of I.C.E.'s plans to deport him. For the Court to even have the statutory power to consider detaining Valladares, the Government must show there is a "serious risk that [he] will flee." *See United States v. Lizardi-Maldonado*, 275 F.Supp. 2d 1284, 1288 (D. Utah 2017). The Government contends that it may meet this requirement by showing that Valladares will be *involuntarily* unavailable for trial if released. In doing so, it appears to be relying on the language of § 3142(e)(1), which directs that courts are to detain a person if the court finds "that no condition or combination

---

[5] *United States v. Boutin*, 269 F. Supp. 3d 24 (E.D.N.Y. 2017); *United States v. Galitsa*, No. 17-CR-324, Dkt. No. 30, at 7 (S.D.N.Y. July 28, 2017); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Ore. 2012) ("When the Executive Branch decides that it will defer removal and deportation in favor of first proceeding with federal criminal prosecution, then all applicable laws governing such prosecutions must be followed, including the BRA."); *United States v. Blas*, 2013 WL 5317228, at *7 S.D. Ala. Sept. 20, 2013 (ordering the Government to release the defendant from custody); *United States v. Castro-Inzunza*, 2012 WL 6622075, at *1 (9th Cir. July 23, 2012 (per curiam);

of conditions will reasonably assure the appearance of the person as required." This language could be read to apply not only to voluntary acts of the defendant, but also to acts taken by others that prevent the person's appearance as required (though most courts have rejected this reading[6]). But how one chooses to read this language is irrelevant to *this* case. Here, before the Court can even get to the point of deciding whether there are conditions it could set that would reasonably assure Valladares' appearance as required, it must first determine whether there is a "serious risk that *the person will flee*." 18 U.S.C. § 3142(f)(2) (emphasis added). This language leaves little doubt that the focus of the inquiry for this section of the Act is on the actions of "the person" and the question of whether there is a serious risk that *he* will flee. Actions of third parties that might make him unavailable do not enter into this analysis. And since the Government effectively conceded that there was little or no risk that Valladares will flee (as it relied solely on the planned actions of I.C.E. to deport Valladares to support its request for detention), there is no factual basis in the record for the undersigned to conclude that there is a serious risk that *Valladares* will flee. Thus, the Court does not even get to the analysis required in § 3142(e)(1), and does not have to consider whether that section only applies to voluntary acts of non-appearance.

As stated on the record at the hearing, the Court concluded that there in fact were conditions it could set that would reasonably assure Mr. Valladares appearance in court as required. In addition to the standard conditions that the Austin magistrate judges impose, the Court also required that Mr. Valladares' spouse, who is a U.S. citizen, co-sign a $25,000 appearance bond. This means that not only would he forfeit his U visa application if he fled, but Valladares would also leave his wife with

---

[6]*See, e.g., United States v. Trujillo–Alvarez*, 900 F.Supp.2d 1167, 1176-78 (D. Or. 2012) (citing cases); *United States v. Barrera-Omana*, 638 F.Supp. 2d 1108, 1111 (D. Minn. 2009); *United States v. Santos-Flores*, 794 F.3d 1088, 1090-91 (9th Cir. 2015).

a $25,000 judgment against her if he failed to appear.  Given his ties to this community, and his incentives to remain in the U.S. and face these charges, the Court concluded that there were conditions it could set that would reasonably assure Valladares' appearance as required.  Because the Government failed to demonstrate that there is a serious risk that Valladares will flee, and because there are conditions that can be set to assure his appearance, the Court entered its Order Setting Conditions of Release (Dkt. No. 21).

However, as stated in open Court, the Order Setting Conditions of Release is STAYED until the district judge rules on the Government's appeal of this Court's decision.  The Clerk is directed to serve a copy of this order on the U.S. Marshal.

SIGNED this 14th day of September, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE